MEMORANDUM. On the eighteenth day of January, 1840, the Hon. MARCUS MORTON, by accepting the office of Governor of the Commonwealth, resigned the office of Justice of this Court, which he had held since July 4th, 1825.

On the 23d of March, 1840, the legislature passed an act, declaring that "the number of the Justices of the Supreme Judicial Court shall be four only."

―――――

## EDWARD W. TRYON & others vs. THOMAS WHITMARSH.

Fraud in the defendant, and damage to the plaintiff, are the gist of the action for a deceitful representation that a third person is entitled to credit.

Such action is not supported by proof that the representation was unwarranted and groundless. It must also be proved, that the defendant did not believe his representation to be true.

THIS was an action of trespass upon the case, for an alleged false and fraudulent representation by the defendant, that Thomas James and William Whitney were entitled to credit, whereby the plaintiffs were induced to give them credit on a sale of goods, for which they could not pay. This repre-

sentation was contained in the following letter, addressed to Messrs. Lynde & Jennings of New York. " Boston, April 18, 1836. Gentlemen : Allow me to introduce you to Mr. W. Whitney, of the firm of James & Whitney, successors of Staples & Nichols. Should he want to purchase goods in New York, you can recommend him with perfect confidence as being entitled to credit ; and if my name should be required, he will explain the proposition I made to them. Yours, &c Thomas Whitmarsh."

At the trial before the chief justice, it was proved, that upon the plaintiffs' inquiring of W. T. Jennings, one of the firm of Lynde & Jennings, whether James & Whitney could safely be trusted, he showed the plaintiffs this letter. It was also in evidence, that Staples & Nichols, mentioned in the letter, failed in January, 1836, and made an assignment of their property for the benefit of their creditors ; that the defendant was their principal creditor, they owing him from twelve to sixteen thousand dollars, and that his was a preferred debt ; that he advised James & Whitney to buy the stock of Staples & Nichols, which was assigned, and to commence business as their successors, in a shop in Congress Street, Boston ; that they bought this stock of the assignees, in March, 1836, and gave a note therefor, payable on demand, for $ 13,800, the defendant having agreed with the assignees to take the note as payment, to that amount, of his debt secured by said assignment, and having also agreed with James & Whitney, that they might select such part of said stock as should suit them, and that he would take back the residue and indorse the appraised value thereof on said note ; that James & Whitney selected goods from said stock to the amount of about $ 10,000, for which they paid the defendant, during the summer of 1836, about $ 3,100 ; and that the defendant held the note for $ 13,800 until the autumn of 1836, when James & Whitney took it up and gave him other notes, dated in March of that year, payable on demand, for the balance that was due to him.

It appeared, that in the summer of 1836, James went into the Western States, and took with him a considerable amount of the

stock of the firm, and was absent several weeks ; that Whitney made evasive answers, when inquired of concerning James's absence, and the place to which he had gone ; and that the defendant expressed an apprehension that all was not right in the concerns of the firm. Early in February 1837, James & Whitney removed much of their stock into a shop in Ann Street, which they were about to open for the purpose of making additional sales. About this time some of their property in the shop in Congress Street was attached by one of their New York creditors ; and the defendant, finding that the stock was diminished, and not knowing for what purpose or to what place it had been removed, commenced a suit on his notes aforesaid, attached all the goods of James & Whitney, and thereby broke up their business.

James testified, that the defendant had agreed to indorse, if required, the notes that James & Whitney might give for goods, in New York, for a premium of five per cent. He also testified that the defendant had explicitly agreed to give the firm a credit of one, two, and three years, on the stock purchased by them of the assignees of Staples & Nichols. But there was evidence tending to discredit this part of his testimony.

The judge, after instructing the jury on all the points in the case, told them, in conclusion, that the plaintiffs, in order to recover, must prove, 1st. That the letter was written by the defendant. 2d. That it was communicated to the plaintiffs, and that they trusted to it. 3d. That they would not have given the credit without it. 4th. That it was substantially false, and that the persons recommended were not worthy of credit. 5th. That the defendant knew all the facts on which their title to be deemed of good credit rested. And 6th. That the plaintiffs lost their debt in consequence of it.

The defendant's counsel requested the judge to instruct the jury, that if the defendant, when he wrote the letter, really and sincerely believed that the opinion expressed therein was true, he was entitled to a verdict in his favor, unless the jury believed that a man of common and ordinary capacity for business could not sincerely entertain such an opinion.

The verdict was for the plaintiffs ; but if the directions given to the jury were wrong, it is to be set aside and a new trial is to be granted.

*Choate* and *Watts*, for the defendant. Fraud and falsehood in the defendant must concur to sustain this action. *Ashlin v. White*, Holt N. P. 389. *Benton v. Pratt*, 2 Wend. 385 *Young* v. *Covell*, 8 Johns. 23. *Gallager v. Brunel*, 6 Cow. 352. *Russell* v. *Clark's Executors*, 7 Cranch, 92. Falsehood does not necessarily import or include fraud. It must be known falsehood in order to be fraudulent. *Patten* v. *Gurney*, 17 Mass. 184. *Weeks* v. *Burton*, 7 Verm. 70. *Lord* v. *Colley*, 6 N. Hamp. 99. *Freeman* v. *Baker*, 5 Barn. & Adolph. 805.

There are two classes of cases ; viz. a representation of facts, and an expression of opinion. As to the first, honest belief is all that is required ; and so as to the second. *Fari quœ sentias,* is the morality and the law of both classes of cases. *Haycraft* v. *Creasy*, 2 East, 92. *Clifford* v. *Brooke*, 13 Ves. 131. *Gainsford* v. *Blachford*, 6 Price, 36. 3 Bos. & Pul. 371, per *Chambre*, J. 8 Taunt. 642, per *Dallas*, C. J., and *Park*, J. 6 Johns. 184, and citations there made from the civil law.

If the defendant had undertaken to assert facts, and had suppressed the circumstances respecting his demand on James & Whitney, he would be liable in this action, if such suppression was fraudulent. But he merely gave an opinion, and was not bound to mention any unfavorable facts. *Gainsford* v. *Blachford*, 6 Price, 36. *Wood* v. *Wain*, 1 Esp. R. 444. In *Eyre* v. *Dunsford*, 1 East, 318, and in *Corbett* v. *Brown*, 8 Bing. 33, the suppression of a fact amounted to a direct misrepresentation.

As the case was put to the jury, they were left to infer, that if they deemed the opinion, expressed in the defendant's letter, to be unfounded, they should find for the plaintiffs. They should have been instructed as the defendant's counsel requested. That request contained the precise law of the case ; and as the instruction was not given, the defendant is entitled, for that reason, to a

new trial   Graham on New Trials, 277.   *Scott* v. *Lunt*, 7 Pet. 607.

*B. Sumner* and *E. G. Austin*, for the plaintiffs, admitted that falsehood and fraud must both be proved, and that the defendant must know that what he says or writes is false, in order to his being charged.   But in such cases, knowledge is nothing more than good reason for belief; and it was for the jury to decide whether the defendant had good reason to believe that James & Whitney were unworthy of credit.   The decision in *Pasley* v. *Freeman*, 3 T. R. 51, established the true doctrine of this class of cases, and it has never been impugned by any adjudication. *Clifford* v. *Brooke*, 13 Ves. 133.   *Evans* v. *Bicknell*, 6 Ves. 186.   *Polhill* v. *Walter*, 3 Barn. & Adolph. 114.   *Eyre* v. *Dunsford*, 1 East, 318.   The case of *Haycraft* v. *Creasy*, 2 East, 92, lacked every thing that was necessary to maintain the action.

The case at bar is supported by *Foster* v. *Charles*, 6 Bing. 396.   *S. C.* 7 Bing. 105.   *Corbett* v. *Brown*, 5 Car. & P. 363. *Ward* v. *Center*, 3 Johns. 271.   *Upton* v. *Vail*, 6 Johns. 181. *Hutchinson* v. *Bell*, 1 Taunt. 558.   The old actions for a deceit bear strongly on cases of this nature, and several of them are cited with approbation by *Buller*, J. in *Pasley* v. *Freeman*. See also Yelv. 21 *a*, *note* (1).   *Dale's case*, Cro. Eliz. 44.   *Bayly* v. *Merrel*, Cro. Jac. 386.

The instructions given to the jury, when taken together, presented the law as the defendant's counsel insist that it should have been ; and the six points, on which they were finally told that they must be satisfied by the proof, contain substantially the doctrine of the specific instructions prayed for.   The practice of granting new trials, because the judge omits to give instructions in the form prescribed by counsel, has never been adopted by this court.

The opinion of the court was delivered by

WILDE, J.   The principle of law on which this action is founded is well settled, and the question to be decided is, how it is to be applied to the point in controversy between the parties.   It is alleged in the declaration, that the defendant fraudulently and de-

1*

ceitfully represented to the plaintiffs, that certain persons named in the writ were in good credit, and might safely be trusted, when in truth they were insolvent and wholly unworthy of credit : That the plaintiffs were thereby induced to give them credit, and have in consequence thereof sustained a loss. The gist of the action is fraud and deceit in the defendant and damage to the plaintiffs, and unless both these material allegations be proved, the action cannot be sustained. The leading case in which the law in this respect was fully considered and settled is the case of *Pasley* v. *Freeman*, 3 T. R. 51. The question arose on a motion in arrest of judgment. The declaration contained allegations similar to those above stated, and a majority of the court held that the declaration was good, and that the action would well lie. *Grose*, J. dissented, on the ground, that it was not alleged in the declaration that there was any privity of contract between the parties, or that the defendant had any interest in the transaction, or that he had colluded with any one who had an interest. The other learned judges held that these circumstances were not material, and that the foundation of the action was fraud and deceit in the defendant and damage to the plaintiff, and that these allegations being proved, an action might be sustained. And so the law has uniformly been laid down in all the subsequent cases. Lord *Eldon*, it is true, (6 Ves. 186,) doubted whether an action in such a case would be sustained in a court of law, although he admitted the party would be entitled to relief in equity.

In *Haycraft* v. *Creasy*, 2 East, 92, the defendant had assured the plaintiff and son's agent that one Robertson was a lady of great fortune, and much greater expectations, and that the plaintiff would be perfectly safe in giving her credit to any amount ; and that he knew this of his own knowledge. These assurances were repeatedly made, but it turned out that the person recommended was in truth a person of no credit. On this evidence the jury, on a trial before Lord *Kenyon*, found a verdict for the plaintiff, and on a motion for a new trial, Lord *Kenyon* was of opinion that the verdict was well sustained by the evidence, on the ground, however, that the defendant was guilty of a legal fraud, which consisted "not in the defendant's saying that he

believed the matter to be true, or that he had reason so to believe it, but in asserting positively his knowledge of that which he did not know." "That he was, therefore, guilty of a gross falsity ; and that it was a juggle to say that the defendant's words in common parlance did not import knowledge in the strict sense of it." But a new trial was granted, because the case had gone to the jury on the ground, that, though the defendant were himself a dupe, yet if the representation made by him were false, he was answerable ; and because the words of the defendant were not to be taken in the strict sense in which a lawyer would use them, but as expressing a strong opinion of the truth of his assertion, from circumstances within his own knowledge. "It is true," says *Grose*, J., "that the defendant asserted his own knowledge upon the subject ; but consider what the subject was of which that knowledge was predicated. It was concerning the credit of another, which is matter of opinion. When he used those words, therefore, it is plain that he only meant to convey his strong belief of her credit, founded upon the means he had of forming such an opinion and belief."

It appears therefore very clearly, that there was no diversity of opinion between the learned judges, as to the law, although they differed as to its application to the evidence in that case. All agreed, that to maintain the action there must be proof of fraud in the defendant, and that if he knew the representation he made was false, that would amount to a legal fraud, although he might have no interest in the matter and might expect no advantage therefrom. That was the doctrine in *Pasley* v. *Freeman*, and it has been followed with great uniformity of opinion ever since. In *Clifford* v. *Brooke*, 13 Ves. 133, it is clearly and distinctly stated by Lord *Erskine*. "The proposition," he says, "is not, that if a man, asked whether a third person may be trusted, answers, ' you may trust him ; he is a very honest man, and worthy of trust,' an action will lie, if he proves otherwise. There must be knowledge at the time. That is the sound principle ; that the defendant, knowing that person to be dishonest, insolvent, and unworthy of trust, made the representation." The plaintiffs counsel relied on the case of *Foster* v. *Charles*, 7 Bing. 105, to

show that actual fraud is not necessary.  But the same doctrine is maintained in that as in all the other cases.  The jury were instructed by the chief justice, that if the defendant made the representation, knowing it to be false, that would be such a fraud as would maintain the action.

In that case, the jury found that the defendant was guilty of fraud in law, but that he had no fraudulent intent.  And judgment was rendered on the verdict, the court being of opinion that as to the fraudulent intent the jury meant no more than this, that the defendant was not actuated by the baser motive of obtaining by his misrepresentations an advantage for himself.

The law being thus clearly established, the only question is, whether it was fully and sufficiently laid down in the instructions to the jury ; or whether the case was not so left to them, that they might infer that it was not necessary to inquire, whether the defendant knew that the assertion contained in his letter was false.

Now, we are of opinion, that all the six propositions, which the jury were told the plaintiffs must prove, in order to entitle them to a verdict, might have oeen affirmatively proved to the satisfaction of the jury, and yet the defendant might have been guilty of no fraud, and might have truly believed that the assertion contained in his letter was true.  It does not follow, because the jury were of opinion that the persons recommended were unworthy of credit, that the defendant, with a full knowledge of all the facts proved, was of the same opinion. Persons of equal intelligence, with the same means of information, and the same knowledge of facts, often form different and conflicting opinions.   Their habits of thinking and of reasoning may differ.   Some are very credulous, and are easily duped, or deceived by appearances, while others are very suspicious, cau tious, and skeptical, so that there is no standard of opinion, ex· cept in very clear cases.  Undoubtedly there are cases, in which the same evidence would impress all reasonable minds with the same conviction.   But this was not such a case.   The evidence was doubtful, from which two juries * have drawn different inferences.

---

* In a similar action by Lynde & Jennings against Whitmarsh, the defend ant obtained a verdict.

We are, therefore, of opinion that the question for the jury was, whether the defendant knew that the assertion or opinion contained in his letter was false, or that he did not fully believe it to be true ; or whether he did not conceal a material fact from the knowledge of the plaintiffs, with the intention to deceive them. It is true, as the defendant's counsel have argued, that the defendant was not bound to disclose the facts on which his opinion was founded ; but if he kept back any material fact, with the intent to deceive the plaintiffs, this would be fraudulent. If, on the other hand, he had trusted the persons recommended to a large amount, believing them trustworthy, then his omission to disclose the facts on which his opinion rested would be no presumptive proof of fraud.

Perhaps it is not material in which form the question is to be left to the jury, whether the defendant were guilty of a fraudulent concealment, or of making a false affirmation, knowing it to be false. The evidence which would support one of the allegations would probably support the other. The question is whether the defendant gave an honest opinion, or was actuated by some fraudulent intention. And as this question was not distinctly left to the jury, we think the defendant is entitled to a new trial.

The jury must have understood, that if they should be of opinion, that the six propositions stated to them were sustained by the evidence, the defendant would be liable, although he might sincerely believe that the assertion contained in his letter was true. But we think they should have been instructed, that notwithstanding they should find all the said propositions in favor of the plaintiffs, still the defendant would not be liable, if they were of opinion, from the evidence, that he gave an honest opinion, and truly believed that the persons recommended were trust worthy.

*New trial granted.*